**Donald Wayne HARDIN, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 979S255.**

Supreme Court of Indiana.

June 3, 1980.

Robert C. Levinson, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant was convicted of voluntary manslaughter by a jury on February 8, 1979. He was sentenced to imprisonment for a determinate period of fifteen (15) years on March 5, 1979. Appellant's motion to correct errors was denied on June 25, 1979. He appeals this denial alleging that there was insufficient evidence to sustain the verdict, that the court erred in allowing a tape recording and transcript of his interrogation into evidence, and that he was incorrectly sentenced.

On May 3, 1978, the appellant, Donald Wayne Hardin was proceeding north on State Road 231 north of Jasper, Indiana, in his truck and picked up the victim, Ronnie Lee Campbell, who was hitchhiking. Campbell offered the appellant thirty dollars ($30.00) to take him to Fort Wayne. Hardin finally did agree to take Campbell to Indianapolis. They went to Hardin's home in Hilham, Indiana, where Hardin stopped to pick up a spare tire for his pickup truck. Hardin and Campbell left Hardin's home at approximately 6:30 p. m. and stopped for gas in French Lick. Campbell bought beer, which he drank. Hardin drank from a bottle Campbell had with him which Campbell claimed contained homemade whiskey.

Hardin testified that as they travelled north from Paoli, Indiana, the personality of the victim appeared to change and to alternate between aggressiveness and friendliness. Hardin said that Campbell told him that he had a gun in his duffle bag. Hardin stated that he never saw the weapon that Campbell claimed to have. Hardin said that at one point Campbell touched his knee and later touched his penis as they drove toward Indianapolis. Hardin testified that he was unable to tell whether Campbell's touching him was accidental or intentional. Hardin also testified that Campbell commented that Hardin had a nice truck and a nice CB radio and that he would just take it, but that then he would say that he was joking and that he just wanted to see what Hardin's reaction would be.

Hardin had a rifle in his truck which he had moved to the driver's side of the truck when he picked up Campbell. Hardin stopped his truck to urinate at the side of the road. As he got out of the truck he took his rifle with him. As Hardin stepped out of the truck he watched Campbell reach down toward his duffle bag on the floor and lean toward him. Hardin did not see Campbell take anything out of the bag, nor did he see any gun in Campbell's hands. He saw one of Campbell's hands move and Hardin said he presumed that Campbell was reaching for the gun that he had talked about. Hardin claims he is not able to recall whether his rifle had already been cocked or not. He was not able to recall whether or not he pulled the trigger. He testified that he turned around and pointed the rifle in Campbell's general direction to stop whatever he was trying to do and that the gun discharged. Hardin then pushed Campbell and the duffle bag out of the truck and headed back toward his home in southern Indiana. Hardin's description of how he removed Campbell from the truck and their positions at the time the gun discharged was not certain. Hardin did not examine Campbell to determine whether he was dead or alive.

Hardin next recalls being stopped by the Bloomington City Police for a traffic violation. When they asked for an explanation of the pool of blood on the seat of his truck, Hardin told them it came from a groundhog. He claims that he did not tell the Bloomington police about the shooting because he was uncertain that the events had actually happened, because he was afraid of the police, and because he just wanted to get home. After this stop and a brief examination by police to determine whether appellant was able to drive, he was allowed to proceed on to his home. He immediately called his common law wife and told her he might have shot someone.

Hardin testified that he threw some of Campbell's clothing into a trash dumpster near Haysville, Indiana. The following morning, May 4, 1978, Hardin went to work and cleaned up the inside of the truck and

put other clothing belonging to Campbell into the trash dumpster at the Jasper, Indiana, Holiday Inn. He testified that he placed his rifle and shells in his common law wife's car when he picked her up earlier that morning.

Hardin then told his employers, Thomas Bocock, the Assistant Manager, and Jim Harris, the Inn Keeper of the Jasper Holiday Inn, that he had possibly shot someone the previous evening. As a result, Hardin then talked with Donovan Bare, a psychiatric social worker at the Southern Hills Mental Health Center. After listening to Hardin, Bare advised him to go to the police and to inquire whether any shooting had been reported. Hardin then went to the Dubois County Sheriff, Hochgesang, and made a statement which was disbelieved. However, the sheriff called in the State Police and Hardin gave a statement to Detective Carl Shaw which was tape recorded. Shaw began an investigation of the possible crime and began to recover evidence from Hardin with Hardin's help and voluntary consents to search and seize his boots, clothing, truck and rifle. Later during his investigation Shaw became aware that a body had been found along the roadside in Putnamville State Police jurisdiction which matched the description given to him by Hardin.

## I.

Appellant contends that there is insufficient evidence to sustain his conviction for voluntary manslaughter. His main contention is that a conviction for voluntary manslaughter cannot stand under Ind.Code § 35–42–1–1 and Ind.Code § 35–42–1–3 (Burns Code Ed.Repl.1979) without evidence of sudden heat. He claims that the current statute is sufficiently different from former statutes to make reliance on cases such as *McDonald v. State*, (1975) 264 Ind. 477, 346 N.E.2d 569 inapplicable to this issue.

A similar argument was presented in *Wallace v. State*, (1979) Ind.App., 395 N.E.2d 274 and was rejected. The court in *Wallace, supra*, upheld the long standing rule in Indiana that voluntary manslaugh-

ter is, in effect, a lesser included offense of murder and one of which one may be convicted if charged with murder.

The appellant here, as in *Wallace*, claims that the legislature has made sudden heat an element of voluntary manslaughter in the current statute. As was noted by that court, in Ind.Code § 35–42–1–3(b) the legislature specifically stated:

"(b) The existence of a sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) [35–42–1–1(1)] of this chapter to voluntary manslaughter. . . ."

Hardin argues that sufficient time had passed from the time of Campbell's touching of him and Campbell's comments about guns and taking Hardin's truck or CB radio that any "sudden heat" raised by Campbell's provocations should have subsided and that Hardin was acting out of fear in reaching for his gun.

Hardin did not testify that he was acting in self-defense. He continued to maintain that he was unclear on many of the details of the circumstances of the shooting. Hardin did testify that he did not see Campbell take anything out of his duffle bag and that he did not see Campbell with a gun. However, fear, terror or resentment can be sufficient to obscure reason. As we stated in *Love v. State*, (1977) 267 Ind. 302, 369 N.E.2d 1073, 1075:

"[A]ll that is required to reduce a homicide from murder to voluntary manslaughter is sufficient provocation to excite in the mind of the defendant such emotions as either anger, rage, sudden resentment, or terror as may be sufficient to obscure the reason of an ordinary man, and to prevent deliberation and premeditation, to exclude malice, and to render the defendant incapable of cool reflection."

The jury could have found from the evidence presented at trial that the above standard was met. There is no error on this issue.

Appellant additionally contends that Ind. Code § 35–42–1–1(1) incorporates within

the element of an "intentional or knowing act" the concept of malice. He argues that there was no evidence of malice and that therefore the evidence is insufficient to support the jury's verdict.

■ The evidence showed that Hardin intentionally pointed the loaded gun in Campbell's direction and it discharged. He stated that he did this to "maybe perhaps stop whatever he was trying to do." Malice may be inferred from the intentional use of a deadly weapon in a manner reasonably calculated to cause death or great bodily injury. *Sypniewski v. State*, (1977) Ind., 368 N.E.2d 1359.

■ The evidence was sufficient for the jury to have returned a verdict of guilty to the charge of murder. The jury, therefore, could return a verdict of voluntary manslaughter. There is no error on this issue.

## II.

■ Appellant next claims that the trial court erred in admitting a tape recording of his in-custody interrogation and the transcript of this recording. He objected to the admission of these exhibits at trial and a hearing was had outside the presence of the jury. At this hearing it was discussed that at a prior hearing the transcript had been corrected to identify speakers on the tape. It was noted that at one place on the tape several speakers spoke at once and that this part was unintelligible. Other parts of the recording were so faint, it required that one listen from within four to five inches of the tape speaker for the tape to be audible.

The objections of the appellant were that reference to psychiatric treatment should be deleted and the objection that if they were deleted the tape would not be accurate. The objection was made that all of the jurors could not hear every part of the tape at the same time because the recording was faint in parts. Appellant also objected because no explanation was given of the meaning of the word coercion in terms of the *Miranda* warning when defendant replied that he did not know what coercion meant.

The court found as a result of the evidence presented relative to the conversations of the defendant prior to and during the conversation recorded on the tape, the court's in camera hearing of the tape, and the court's examination of the transcript, that the tape recording was authentic and correct. The court also found that the testimony elicited was freely and voluntarily given, that all warnings were given and that the recording was of sufficient clarity to be intelligible. The court determined that the inaudible parts, if any, detracted little from the meaning of the conversation and admitted the exhibits. The tape was played to the jury and they were given the transcript for the limited purpose of assisting them in listening to the tape recording. The jury was so admonished. The judge did not delete the portion of the tape in which the defendant said he was under psychiatric care. Appellant requested that the judge make the deletion and then instruct the jury to avoid their speculation as to what the deletions were. The court denied his request.

Appellant cites *Lamar v. State*, (1972) 258 Ind. 504, 282 N.E.2d 795 for his claim that this court should substitute its judgment for that of the trial court's discretion as to the admissibility of the tape recording. We note at the outset of our consideration of this issue that the appellant has not included the tape recording in question in the record before this court for review.

From our examination of the transcript of the recording and the transcript of the trial court's hearings on the admission of these exhibits, it is clear there was no abuse of his discretion in admitting the exhibits. The transcript of the recording was determined to be authentic. No deletions or changes were made. The speakers were identified. Waivers were recorded on the tape and a written, signed *Miranda* form was also executed and noted on the tape. In *Lamar, supra*, it was suggested that the trial judge be furnished a typewritten transcription of the recording and that he listen to the recording to determine its admissibility. This was done. In the recent case of

*Pettit v. State,* (1979) Ind., 396 N.E.2d 126 we explained that one of the main concerns in the admission of tape recordings is that they not confuse the jury and result in jury speculation. There is no evidence of such confusion here. In addition, witnesses Bocock, Harris, Bare, Hochgesang and Shaw all testified as to what Hardin had told them as to his belief that he had shot someone the previous evening. Prior to the time that any *Miranda* warnings were required to be given he had stated to these witnesses most of the details that were included in his in-custody interrogation. At trial, the appellant testified and restated everything that was in his original in-custody statement. There is no error on this issue.

### III.

■ Appellant next alleges that the trial court erred in sentencing by not enumerating in the record the considerations under which it imposed a fifteen (15) year sentence. The appellant was convicted of voluntary manslaughter. The penalty for that crime is fixed by Ind.Code § 35–50–2–5 (Burns Code Ed.Repl.1979) as follows:

> "A person who commits a Class B felony shall be imprisoned for a fixed term of ten (10) years with no more than ten (10) years added for aggravating circumstances or not more than four (4) years subtracted for mitigating circumstances."

The defendant was sentenced to fifteen (15) years imprisonment. In *Gardner v. State,* (1979) Ind., 388 N.E.2d 513 this court stated:

> "[W]hen a judge increases or decreases the basic sentence, suspends the sentence, or imposes consecutive terms of imprisonment, the record should disclose what factors were considered by the judge to be mitigating or aggravating circumstances."

388 N.E.2d at 517.

The appellant contends that the judge failed to enumerate the factors considered to be mitigating or aggravating factors throughout the sentencing hearing. The appellant further claims that because these factors were not enumerated the sentence cannot adequately be reviewed and that this cause must be remanded.

The appellant, his attorney, the prosecuting attorney and witnesses were present at the sentencing hearing. The judge questioned the appellant extensively prior to sentencing. He was apparently offering the appellant an opportunity to explain a conflict in the evidence and the defendant's version of the events that took place. Obviously, the appellant's version of those events was the only one available. The judge was troubled by the fact that the appellant had described exiting from the driver's side of the pick-up truck, wheeling and discharging the gun. The victim, who was on the passenger side of the vehicle was killed by a bullet that entered his head behind his right ear. The judge was concerned with giving the appellant an opportunity to explain further how the offense occurred in regard to whether or not the sentence should be increased or decreased. The judge stated that he felt that if he could not believe that the appellant was telling the truth about how this happened, he could not give great credence to the appellant's view of why it happened. The appellant responded that the decedent was reaching into his bag and leaning toward him and could possibly have turned his head.

Appellant's attorney commented at the sentencing hearing that the unanswered questions bothered everyone and that the appellant could not or would not "open up," that no one really knew what Hardin was like, and that he had not been of any value to the court in trying to determine what sentence to pronounce. However, he called to the court's attention that defendant had no prior criminal record and stated his belief that the appellant would not commit another similar crime.

The judge sentenced the appellant to the Indiana Department of Corrections for a period of fifteen years, recommending that he be confined under medium security. At this time the court did not enumerate any factors for aggravation of the presumptive sentence of ten (10) years. The appellant

filed a motion to correct errors and a memorandum in support of his motion on May 9, 1979. Hearing was had on June 6, 1979, on the motion to correct errors. The court denied the motion to correct errors in all respects except it found that West's Ann. Ind.Code § 35–4.1–4–3 (1978) requires that the court make a record of the sentencing hearing including a statement of the Court's reasons for selecting the sentence that it imposes if the court finds aggravating circumstances or mitigating circumstances. In compliance with the statute, the court, at that time, made a statement of the reasons for selecting the sentence of fifteen (15) years. The court stated that in light of the evidence presented in the case, and the explanation offered by the defendant, the court believed that there was a risk that the defendant could commit another similar crime. The court commented that the nature and circumstances of the crime were of the most serious nature, being a crime against a person and one which resulted in the death of a human being. The court again commented that because of the questions regarding the credibility of the appellant, it could not conclusively state that the victim of the crime induced or facilitated the offense, or that there were substantial grounds tending to excuse or justify the crime. The court stated its belief that the appellant was in need of correctional or rehabilitative treatment that could best be provided by his commitment to a penal institution and that the imposition of a reduced sentence would depreciate the seriousness of the offense. The court also determined that the aggravating circumstances present in this case outweigh the mitigating circumstance of the defendant's having no significant past criminal record. The court adequately complied with the sentencing statute and the basic guidelines set out in *Gardner v. State*, (1979) Ind., 388 N.E.2d 513.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.