### Orville R. UTLEY, Appellant,

### v.

### STATE of Indiana, Appellee.

### No. 785S289.

Supreme Court of Indiana.

April 15, 1986.

Stephen C. Haas, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Orville Utley was tried and convicted by a jury in the Vanderburgh County Superior Court of Murder, Attempted Murder, and Battery. He received a sentence of forty (40) years for the murder conviction, thirty (30) years for the attempted murder conviction and five years for the battery conviction, said sentences totalling seventy-five (75) years and to be served consecutively. Appellant now raises the sole issue of sufficiency of the evidence.

Appellant urges that the evidence adduced at trial insufficiently supported a verdict of murder and attempted murder. He claims that reasonable minds could not differ in concluding that his acts were done in "sudden heat," thereby rendering him guilty of voluntary manslaughter and attempted voluntary manslaughter. Before reviewing the facts adduced at trial, we note the well-settled standard with which we review these facts on appeal. We will not reweigh the evidence nor determine the credibility of witnesses, but rather, will look to the evidence most favorable to the State, together with all reasonable inferences therefrom. If there is substantial evidence of probative value to support the jury's finding, such will be upheld. *Robinson v. State* (1985), Ind., 486 N.E.2d 986.

At trial the following evidence was presented. Appellant Utley was divorced from Mary Joan Utley, hereinafter referred to as Joan. After a short reconciliation, during which Joan and Appellant resided together, Joan took her daughter to live with Mary Truitt, Joan's mother. Joan then began dating Alan Patterson.

Joan made plans to travel to Florida with her daughter and Patterson for a vacation. Unbeknownst to Appellant the plans included separate hotel rooms, whereby Joan and her daughter would lodge in one room, and Patterson in the other room. Appellant was upset about the trip. He testified he was disturbed by the possibility that his daughter might see his ex-wife and Patterson engaged in sex.

On August 2, 1982, two days before Joan's vacation, Appellant went to the V.F.W. and had two beers. He left and returned about two hours later and drank two more beers followed by a double shot of whiskey. Around 4:30 p.m., Mary Truitt, Joan and her daughter came to the V.F.W. to eat and play Bingo. They saw Appellant at the bar. He came over and said he had seen Patterson in the parking lot and further commented, "You won't make the trip to Florida." Bartender Miller had observed Appellant leave his place at the bar and then noticed Appellant five minutes later coming back into the V.F.W. with a shotgun. Meanwhile, in the parking lot Wilburn Crouse observed Appellant go to his car and heard Appellant warn someone not to go back into the post with him as there was going to be a shooting.

Mr. Crouse ignored Appellant and as he and his wife entered the V.F.W., Appellant walked back in behind them. When they reached the door to the dining room, Appellant pushed in front of Crouse's wife and started yelling. He screamed, "Joanie, you son of a bitch, I'm going to kill you this time," and "Joanie, you son of a bitch, I told you I'd get you." Joanie looked up in terror and, upon hearing the screams and

seeing the shotgun, grabbed her daughter and tried to run. Appellant pursued them.

Several eyewitnesses saw Appellant shoot Joan and one testified Appellant yelled at Joan before shooting her the first time, "I said I was going to kill her, and I'm going to kill her." Another witness said Appellant was directly over Joan when he fired the second shot.

Mary Truitt, screaming at Appellant, was also shot and paralyzed. James McKinley, the chef and also a minister, finally persuaded Appellant to stop the shooting. Appellant then submissively waited for the police to arrive. Joan Utley thereafter died from internal hemorrhaging due to the gunshot wounds.

These facts taken together produce more than sufficient evidence that Appellant was guilty of murder and attempted murder, as opposed to voluntary manslaughter and involuntary manslaughter. Murder is defined by Ind. Code § 35–42–1–1 (Burns Supp.1985) as follows:

> "Sec. 1. A person who:
> (1) knowingly or intentionally kills another human being; or
> (2) kills another human being while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape, or robbery;
> commits murder, a felony."

The additional element of "sudden heat" reduces the above crime to voluntary manslaughter. Ind. Code § 35–42–1–3 (Burns Supp.1985). "Sudden heat" has been defined as anger, rage, sudden resentment or terror sufficient to obscure the reason of an ordinary man and to prevent deliberation and premeditation, to exclude malice, and to render defendant incapable of cool reflection. *Hardin v. State* (1980), 273 Ind. 459, 404 N.E.2d 1354. There are sufficient facts here to support the jury's finding that Appellant was not acting in "sudden heat." He forewarned Joan she would not be taking the trip to Florida. He left the building to obtain a gun in his car. He warned people in the parking lot there was going to be a shooting. He returned and

sought out Joan, screaming that he had told her he was going to kill her. He shot her not once, but twice: the second time while standing directly over her. He then remarked to Joan's mother, "I may as well shoot you, too," and did so. The jury, according to these facts, reasonably concluded that Appellant had not reached the degree of anger that obscured his reasoning and prevented his deliberation. There was sufficient evidence to support the jury's finding of murder and attempted murder.

The trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER and DICKSON, JJ., concur.

SHEPARD, J., not participating.