Clarence MILLS, Appellant,

v.

STATE of Indiana, Appellee.

No. 82S00–8601–CR–106.

Supreme Court of Indiana.

Oct. 29, 1986.

Rehearing Denied Jan. 14, 1987.

John P. Brinson, Barry L. Standley, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was charged with Murder and Battery. A jury trial resulted in a finding of guilty of Manslaughter, a Class B felony, for which he received twenty (20) years imprisonment and Battery, a Class C felony, for which he received eight (8) years imprisonment, the sentences to run concurrently.

On the evening of March 1, 1985, appellant and his friend, Luther Peckinpaugh, went to the Village Saloon in Evansville, Indiana, where they met Ron Kessler. Appellant claims that one of his reasons for looking for Kessler was to obtain a ride home. Later in the evening, Donald Harris and his friend David Schnapf arrived at the Village Saloon where they met their friends Lynn Marie Schnell and Carla Sonderman. Both Schnell and Sonderman later testified that appellant and Kessler made crude and rude comments and noises to them as they walked by the bar.

Sometime later in the evening, Harris went to the bar to get a pitcher of beer, at which time he claimed a "little bitty dude" flicked a cigarette lighter under his face and made insulting remarks. Although there is not positive identification in the record, the clear inference is that the "little bitty dude" was appellant. Still later in the evening, Schnapf and Sonderman exchanged some words with appellant and Kessler at the bar; however, there was considerable noise in the establishment and witnesses were unable to relate what the nature of the exchange was, although it appeared to be angry. There was no physical contact between any of the parties inside the bar.

The parties exited the bar at the same time and immediately upon arriving outside Kessler pushed Schnapf and Schnapf hit Kessler. Harris grabbed appellant and started striking him. It is interesting to note that Harris was 6'7" and weighed 190 pounds and appellant was 5'6" and weighed 140 pounds. While the four men were thus engaged in combat, appellant drew a knife from a sheath which was carried in his back pocket and wounded both Harris and Schnapf. Harris died at the scene from a knife wound to the heart. Immediately after the altercation, appellant went to a nearby restaurant where he was heard to say that he would "stab the guy in the white shirt again if I see him". (The man in the "white shirt" was Schnapf.)

Evansville Police Officer Wooley was working off duty at the Village Saloon at the time. When the altercation started Wooley shouted at them to stop. Immediately both Harris and Schnapf informed Wooley the fight was not their fault.

Upon searching appellant, Wooley found the blood-stained knife in his possession. Dr. David Blamberg, a pathologist, testified that the wounds on Harris' body were compatible with and could have been made by the knife. Both appellant and Kessler were arrested inside a nearby restaurant and appellant was turned over to Officer Fellwock, who had arrived in response to a call. At the time of his arrest, appellant had a knife cut on his hand which was bleeding considerably. Otherwise, he appeared to have no serious injuries.

Appellant claims the trial court erred in overruling his motion to suppress a statement made by him to Officer Fellwock while he was being transported from the scene of the incident. (Due to the fact appellant had a wound on his hand, he was transported to the hospital first for medical attention and then transported to the jail.) The testimony of Officer Fellwock was offered by the State on rebuttal. Upon the objection of appellant's attorney, the court held a hearing out of the presence of the jury to determine the nature of this rebuttal testimony. The court ruled that the testimony was inadmissible if the State was intending to introduce it as substantive evidence of appellant's guilt. The prosecution then stated that the evidence was being submitted to show that immediately after the altercation, appellant had made statements to the police officer which were con-

trary to the statements which he had made on the witness stand before the jury. After discussion between the prosecutor, the defense lawyer and the judge concerning the written report by Office Fellwock, the judge permitted the witness to read from his report as follows:

> "He told both officers that he and a friend, Ron Kessler, had been inside the Village Saloon and had (sic) been very crowded. He further stated that some guys had bumped into him and his friend and that they got mad at the both of them. The Mills subject and his friend then decided to leave the saloon and go home. Upon getting outside, the Mills subject stated that he and his friend were both jumped. He stated, he waived his knife around trying to defend himself."

This evidence contradicted appellant's evidence that nothing had occurred inside the saloon and also contradicted his evidence that he did not remember having the knife in his hand. Following the submission of this evidence, the trial court admonished the jury that the portion of Officer Fellwock's testimony describing the statement made by appellant was not to be used by the jury as proof of appellant's guilt but that they could consider the testimony only as it bore on the credibility of the appellant as a witness when he testified on the witness stand.

In making his ruling, the trial court properly relied upon *Oregon v. Hass* (1975), 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570.

Appellant claims the above evidence could not be used for impeachment because a proper foundation had not been established. *Anderson v. State* (1977), 267 Ind. 289, 370 N.E.2d 318, *cert. denied* (1978), 434 U.S. 1079, 98 S.Ct. 1273, 55 L.Ed.2d 786.

■ On cross-examination, after first testifying that he did not remember taking out his knife that night, he was asked by the State if he remembered telling anybody that evening that he had taken out his knife and specifically was asked if he remembered telling Officer Fellwock that he

had done so. To which appellant answered "I could have told him, I'm not for sure". After which he again reiterated that he did not remember taking out the knife. We hold an adequate foundation had been laid for impeachment.

■ Appellant also claims the testimony was inadmissable because it was made while he was in custody and after he had asked for a lawyer following the giving of his *Miranda* warnings. It was for these reasons the trial court had excluded the statements so far as the substantive portion of the State's case was concerned. Under the authority above cited, the trial court correctly allowed the statements to come in purely as the statements made contrary to appellant's testimony at trial. The fact that a prior statement made by a defendant has been ordered suppressed by the trial judge does not give the defendant a license to assume the witness stand and proceed to testify contrary to the prior statement without any fear of contradiction. *See Oregon v. Hass, supra.*

■ Appellant claims the trial court erred in sustaining the State's objection to questions propounded by him on cross-examination of Officer Wooley. As near as we can determine from the record, appellant was attempting to belabor the question of which pair of the four fighting men was first approached by Officer Wooley. There appears to be an attempt to demonstrate that Harris and Schnapf were first approached by the officer, thus it would follow that they were the aggressors in the altercation. It appears that they may well have been the aggressors; however, to say that this may be established by showing that they were the ones first approached by Officer Wooley is to stretch a point. It was not necessary for the jury to find otherwise in rendering a verdict of manslaughter against appellant.

Appellant also takes the position in this Court that he should have been allowed to show that the decedent Harris had been involved in a prior fighting incident. Even assuming that Harris was the aggressor in

the altercation between him and appellant, appellant testified that he did not know Harris nor anything about him at the time the incident occurred. Thus, any history of fighting which Harris may have had was unknown to appellant and could not have been a factor in his defense.

Even if we would assume for the sake of argument that the evidence of Harris having been engaged in a former fight would have been admissible as evidence that he was the initial aggressor, the exclusion of such evidence would not be reversible error in view of the fact other evidence indicated that Harris was the aggressor. Assuming Harris was the aggressor, the fact remains he was unarmed and the altercation occurred in the open where appellant was free to retreat. There is ample evidence in this record for the jury's determination that he did not choose to so retreat but that he deliberately chose to retaliate with a deadly weapon. Under these circumstances, we can see no reversible error in excluding the testimony of the fact that Harris had previously engaged in a fight.

Appellant also claims there is insufficient evidence to support the verdict of the jury. This issue is closely tied to the issue just discussed but will be further discussed here.

It is appellant's claim that the State failed to rebut his claim of self-defense, failed to show that he knowingly used a knife in a manner likely to cause death and failed to show "sudden heat." The issue of self-defense has been dealt with above. The issue as to his use of the knife in a manner likely to cause death was demonstrated by the evidence from which the jury could conclude that it was appellant's knife that inflicted the wounds causing Harris' death. Harris not only suffered the fatal blow which penetrated his heart but received three other severe blows as well. Not only was Harris wounded, but Schnapf was also wounded.

The further fact that appellant returned the blood-stained knife to the sheath in his rear pocket following the altercation was evidence from which the jury could conclude that he was in charge of his faculties throughout the altercation and retained the presence of mind to deliberately act as he did.

The question of the State failing to prove "sudden heat" is of no avail to appellant. Sudden heat is a factor which may reduce a murder charge to a voluntary manslaughter charge. The State is in no way required to establish sudden heat before a jury can find a defendant guilty of voluntary manslaughter. *Anthony v. State* (1980), 274 Ind. 206, 409 N.E.2d 632. The jury was correct in its observation that the facts of this case did not support the elements of murder. However, the facts do support the elements of manslaughter. Although appellant found himself engaged in a fight with a person much larger than himself, he chose not to retreat but to counterattack with a deadly weapon. The jury was entitled to infer malice from the intentional use of a deadly weapon in a manner reasonably calculated to cause death. *Hardin v. State* (1980), 273 Ind. 459, 404 N.E.2d 1354.

The trial court is affirmed.

PIVARNIK, SHEPARD and DICKSON, JJ., concur.

DeBRULER, J., concurs in result.