**Maurice ROBINSON, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 49S00–8604–CR–335.**

Supreme Court of Indiana.

May 30, 1989.

L. Craig Turner, Boberschmidt, Miller, O'Bryan & Turner, P.A., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of two counts of Attempted Voluntary Manslaughter, a Class B felony, for which he received sentences of six (6) years on each count. He also was found guilty of two counts of Resisting Arrest, for which he received two (2) years on each count. The jury found, as to all counts, that appellant was guilty but mentally ill. All sentences were to run concurrently.

The facts are: Shortly after noon on February 22, 1987, police officers went to the home of appellant to serve a body attachment issued by the Environmental Municipal Court of Marion County. Appellant's troubles apparently started when an investigation indicated that he needed to clean up the inside and outside of his home in Indianapolis. During a court appearance, appellant was instructed not to stay in the house for a couple of weeks until he had the utilities turned on. At a subsequent court appearance, he was told that he might live in the home.

Later he received a summons to reappear, which stated that a body attachment had been issued. When appellant failed to appear, the officers attempted to serve the body attachment. When they arrived at appellant's home, they knocked and announced that they were police officers. However, they received no reply. After several attempts to gain entrance in this manner, they radioed police headquarters for instructions. They were instructed to enter appellant's home and serve the body attachment.

Upon receiving such instruction, they forced open the front door, entered the home, and went from room to room loudly calling appellant's name and announcing that they were police officers. However, appellant could not be found. The officers then surmised that appellant was hiding in the basement of the home. When officers attempted to descend the stairway, appellant fired a shot which struck the wall and fragments from the disintegrating bullet struck Officer Edward Baker in the hand and face. At that time, the officers retreated. However, when they again attempted to enter the basement, appellant again fired, striking Deputy Sheriff Robert E. Skiff in the arm. Officer Skiff and Officer Miller returned fire, wounding appellant. Appellant was immediately captured and hospitalized for his wounds.

■ Appellant claims the verdict is not supported by sufficient evidence. He contends that his conduct was reckless but that there is no evidence to demonstrate that he intended to injure anyone. Appellant's contention flies in the face of reality in view of the facts in this case. He deliberately fired a deadly weapon in the direction of police officers who had repeatedly announced their identity and mission. In so doing, appellant, in fact, wounded two of the police officers. The jury could logically infer an intent to kill from the intentional use of a deadly weapon in a manner reasonably calculated to produce injury or death. *Mills v. State* (1986), Ind., 498 N.E.2d 1236. There is ample evidence in this record to support the verdict of the jury.

■ Appellant claims the trial court erred in permitting testimony of the police officers concerning their entry into appellant's residence. Appellant takes the position that there is no authority in the law to permit a police officer to forcefully enter a home to execute a civil attachment. In support of his position, appellant cites *Casselman v. State* (1985), Ind.App., 472 N.E.2d 1310. The Court of Appeals based *Casselman* upon Ind.Code § 34-4-9-2.1 and correctly observed that there is no specific authorization in the statute for breaking and entering such as we find in Ind.Code

§ 35–33–2–3(b) concerning criminal arrest warrants. However, the language in Ind. Code § 34–4–9–2.1 states in part:

"A sheriff ... who receives an order under this section shall immediately:
(1) serve the writ; and
(2) take the person into custody."

It is obvious from the language of the statute that the legislature intended to empower the officer to carry out these duties.

In the case at bar, the officers clearly announced their identity and the purpose of their presence. When they ascertained that appellant was within the house and was deliberately refusing to respond to their request for entry, they called their superior officers and received instructions to force entry into the home.

It would be totally unrealistic to charge police officers with the duty of carrying out the court's order in a writ of attachment of the body of a person and yet instruct the officers that they had no ability to pursue the subject into his home to carry out such a court order. We do not perceive such construction of the statute to be a realistic interpretation of the legislative intent.

Appellant also cites *Miller v. United States* (1958), 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332. However, we do not find that case to be on point. In that case, law enforcement officers were in fact executing a criminal warrant. However, they broke into the house before announcing their presence and purpose. The Supreme Court held that although the entry might have been lawful if properly done, it was improper because the officers failed first to state their authority and purpose for demanding admission. Such is not the situation in the case at bar.

The trial court did not err in permitting the officers to testify concerning their activities in entering appellant's home.

The trial court is affirmed.

SHEPARD, C.J., concurs in result with separate opinion.

PIVARNIK, J., concurs.

DeBRULER, J., concurs and dissents with separate opinion in which DICKSON, J., concurs.

SHEPARD, Chief Justice, concurring in result.

I join in affirming the judgments entered by the trial court, but I do not agree with the general declaration by Justices Givan and Pivarnik that officers have an unrestrained right of entry to execute a civil arrest. Robinson challenges his conviction for resisting law enforcement by asserting that the officers were not "lawfully engaged in the execution of [their] duties." Ind.Code § 35–44–3–3(a)(1) (Burns 1985 Repl.). Justices Givan and Pivarnik resolve this question by declaring that it is always lawful for an officer to enter a home to serve a civil writ. We do not need to make that decision in this case, which I see as quite different from *Casselman v. State* (1985), Ind.App., 472 N.E.2d 1310. I resolve this issue on a narrower basis, relying on the particular facts of this case which indicate a close connection between the location entered and the purpose for the warrant, to determine that *these* officers were lawfully engaged in the execution of their duties.

An inspection of Robinson's house revealed several problems. As a result he was brought into Environmental Court and ordered not to stay in his home until the utilities were turned on. At a subsequent court appearance he was told he could move back in. When Robinson refused to respond to another summons by the Environmental Court, this writ of attachment was issued.

The use of civil warrants, particularly the right of entry for a civil attachment to collect debts, has been the subject of much criticism. *See, e.g.,* E. Morris & H. Wiener, *Civil Arrest: A Medieval Anachronism,* 43 Brooklyn L.Rev. 383 (1977). The aversion to arrest and imprisonment for debt, however, has not been a barrier to granting authority to enter private premises for certain health and safety purposes. Several regulatory statutes permit an inspector to enter premises with or without the owner's permission.

Local governments have statutory powers which include the right to inspect any structure or other improvement at any reasonable time. Ind.Code § 36–7–2–3 (Burns 1989 Repl.). An inspection officer may obtain a warrant to determine if the building is unsafe if the owner of a building refuses inspection. Ind.Code § 36–7–9–16 (Burns 1989 Repl.).

The Public Health Code allows local health officers to make sanitary inspections of all public buildings. Ind.Code § 16–1–4–8 (Burns 1983 Repl.). They are also authorized to enter upon and inspect private property at proper times after due notice. Ind.Code § 16–1–4–9 (Burns 1983 Repl.). The Indiana Code permits officers of the State Board of Health to enter any building to ascertain whether it is rat infested with the restriction that buildings occupied as dwellings may be entered only between the hours of 9 A.M. and 5 P.M. They may also enter to determine whether extermination requirements are being complied with. Ind.Code § 16–1–27–2 (Burns 1983 Repl.). These inspections do not require a warrant. Ind.Code § 16–1–27–6 (Burns 1983 Repl.).

The Occupational Health and Safety Laws provide that the commissioner of labor and his designated representatives may, at a reasonable time and upon showing credentials to the owner or agent in charge, enter without delay and inspect places of employment in order to enforce occupational safety and health standards. Ind.Code § 22–8–1.1–23.1 (Burns 1986 Repl.). The employer is subject to penalty if the commissioner determines upon reinspection that the employer has failed to correct a violation. Ind.Code § 22–8–1.1–26.1 (Burns 1986 Repl.).

There is no question the State is entitled to enter private premises for a safety inspection. Where that right of entry exists, it must logically extend it to include any subsequent actions which might prove necessary to enforce safety requirements. Robinson does not dispute the State's right of entry to perform the original inspection. The warrant in this case was issued by the Environmental Court and related to the safety of the house. Entry to serve this particular writ of attachment should fall into the category of permissible actions following an inspection.

DeBRULER, Justice, concurring and dissenting.

The Court's decision today, wherein it finds authority in I.C. 34–4–9–2.1 for the sheriff to make a forcible entry into a private home to serve a civil body attachment, finds no support in past cases, is unjustified in principle, and is directed at ends not appropriately within our domain. I therefore dissent to that part of the majority opinion affirming appellant's convictions for resisting law enforcement.

The gravamen of these alleged offenses is shown in the following evidence. Appellant was living by himself at 717 West Roach Street. More than once he had been summoned to Marion County Municipal Court in response to complaints filed against him by the City of Indianapolis for health and environmental code violations. One time he had been told not to live in the house until he got the utilities turned on. On January 3, 1985, Judge David Jester issued a body attachment for appellant to answer for his failure to appear in response to a summons.

On February 22, 1985, two employees of the Marion County Civil Sheriff's office arrived at appellant's home to execute the body attachment. They knocked on the door and identified themselves as police officers but received no response. A screen door at the front of the house was locked from the inside. They heard noises inside the house and saw a light through a window. The civil deputies sought advice from headquarters as to how to proceed and were told to break into the house. After doing so, they searched the upper levels without success, and after identifying themselves as police officers several times, decided to search the basement of the house. Since none of them had a flashlight, they left the house and called by radio for assistance from the Indianapolis Police Department. IPD Officer Edward Baker responded but did not have a flash-

light. Instead, he rolled up a newspaper, lit it as a makeshift torch, and led the way down the basement stairway. Baker was in uniform.

Gun shots were fired in the direction of the officers and they retreated and called in a "Code One"—officer in need of assistance. Numerous police officers from various agencies responded to the call for assistance. Officer Edward Baker and Marion County Sheriff's Deputies Skiff and Miller entered appellant's house and went again into the basement. Upon being discovered hiding behind the water heater, appellant fired at the officers, shooting Deputy Skiff in the arm. Appellant was also shot four times during the exchange of bullets.

It is appellant's claim that his convictions for resisting law enforcement must fail because there was insufficient evidence to prove that the officers were lawfully engaged in their duties as law enforcement officers, as alleged in the informations.

I.C. 35–44–3–3(a)(1), upon which the charges were based, provides:

(a) A person who knowingly or intentionally:

(1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer;

\*    \*    \*    \*    \*    \*

commits resisting law enforcement, a Class A misdemeanor.

An element of the crime of resisting law enforcement is that the officer be "lawfully engaged in ... his duties" at the time of the conduct of the defendant constituting the crime. *Id.*

An arrest is defined by statute as "the taking of a person into custody, that he may be held to answer for a crime." I.C. 35–33–1–5. The authority of enforcement officers to make a forcible entry to arrest on warrant is granted by I.C. 35–33–2–3, and is limited by the requirement of a precedent announcement of authority and purpose, and damages are provided for injurious abuse of that authority. An arrest

warrant for failure to appear may not be issued. I.C. 35–33–4–1. The State does not contend that the officers were exercising arrest powers when forcibly entering appellant's home. It contends instead that such entry was authorized by I.C. 34–4–9–2.1 which provides in pertinent part:

(b) For the purpose of procuring personal jurisdiction over a person who has allegedly violated a court order or who is otherwise in contempt of court, the court may issue a writ of attachment of the body of the person.

\*    \*    \*    \*    \*    \*

(c) A sheriff ... who receives an order under this section shall immediately:

(1) serve the writ; and

(2) take the person into custody.

The State finds a legislative declaration in these words of command to the sheriff that the interest in the orderly administration of civil justice served by the body attachment, like the interest in enforcing the criminal law served by the arrest warrant, outweighs the peace and security of the home and necessitates the authority to forcibly invade it. I find no such implicit declaration. In this respect, the holding in *Casselman v. State* (1985), Ind.App., 472 N.E.2d 1310 is absolutely correct. The statute does not authorize the forcible entry in this case. There is no legal basis for the forcible entry within the circumstances of this case. The entry was therefore not lawful.

A statute must be taken as written. The offense embodied in I.C. 35–44–3–3(a)(1) requires proof that the forcible resistance be met by an officer while he is "lawfully engaged in the execution of his duties." Clearly, the legislature meant more by the language than simply while "engaged in the execution of his duties." "Lawfully" is a modifier. It calls for a determination of whether the conduct of an officer, at the time resistance is met, was within legal limitations. It calls for recognition of the fact that the police power granted to each officer is restrained by law. To construe the language of the statute otherwise is to alter its proscription radically. Whether or not the prosecution has proved this element is a question of fact to be decided by a

properly instructed trier of fact. The evidence tending to prove this element is insufficient in the case. The convictions for violating I.C. 35–44–3–3 as charged should be reversed.

DICKSON, J., concurs.