**In the Consolidated Matter of Mark S. CHRISTOFF and Richard M. Holmes.**

Nos. 23S00–9410–DI–983, 23S00–9508–DI–962.

Supreme Court of Indiana.

Dec. 30, 1997.

(Ind.1997), *reh'g granted on other grounds,* 690 N.E.2d 211 (Ind.1997).

Steven L. Blakely, Acton & Snyder, Danville, IL, for Respondent Mark S. Christoff.

Conrad G. Harvey, Young Harris and Harvey, Crawfordsville, for Respondent Richard M. Holmes.

Donald R. Lundberg, Executive Secretary, Robert C. Shook, Staff Attorney, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

By threatening to renew a long-dormant criminal investigation against a political candidate seeking the office occupied by incumbent prosecutor Richard M. Holmes, unless the candidate opted to forgo his bid to seek the office, Holmes and his chief deputy, Mark S. Christoff, violated the *Rules of Professional Conduct for Attorneys at Law.*

The present disciplinary action against respondent Mark S. Christoff began on October 19, 1994, when the Disciplinary Commission filed a *Verified Complaint for Disciplinary Action* alleging that Christoff violated Ind. Professional Conduct Rule 8.4(d) by engaging in conduct prejudicial to the administration of justice. On August 14, 1995, the Commission, by separate *Verified Complaint for Disciplinary Action,* charged that respondent Richard M. Holmes also violated Prof.Cond.R. 8.4(d). Because the charges arose from the same event, the cases were consolidated for evidentiary hearing. The hearing officer has submitted his report to this Court, therein finding that both Christoff and Holmes engaged in misconduct as charged. Both respondents have petitioned this Court for review of the hearing officer's report. The Commission has also filed a petition for review, therein urging that we adopt the hearing officer's findings and conclusions. Our disciplinary jurisdiction in this case is conferred by Holmes' admission to this state's bar in 1974, and Christoff's admission in 1991.

Our review in attorney disciplinary matters is *de novo* and entails a review of the entire record in the case. *In re Moore,* 665 N.E.2d 40 (Ind.1996). Although the hearing

officer's findings are accorded emphasis due to his unique opportunity for direct observation of witnesses, we remain the final arbiter of misconduct and sanction. *In re Gemmer*, 566 N.E.2d 528 (Ind.1991); *In re Kern*, 555 N.E.2d 479 (Ind.1990). We will resolve this case within this review framework.

We now find that during November 1992, Holmes was (and continues to be) the elected prosecuting attorney of the 61st Judicial Circuit, which is comprised of Fountain County, Indiana. At that time, and continuing until present, Christoff was the chief deputy prosecuting attorney for that district. At about the same time, a Fountain County lawyer (the "lawyer") assisted a client in seeking, for his tavern, a liquor license from the Indiana Alcoholic Beverage Commission (the "ABC"). The lawyer and the client met three or four times while the lawyer prepared appropriate application papers for the license. Although the lawyer initially prepared an application on behalf of the client as an individual, the client eventually incorporated (with the lawyer's assistance) and directed the lawyer to prepare a second "corporate" application for the ABC.

The initial individual ABC application asked if the client/applicant had ever been convicted of a felony or a misdemeanor involving theft, drugs, or alcohol. The answer provided was "no." Similarly, the later corporate application asked if any officers, directors, or shareholders had ever been convicted of a felony or misdemeanor involving theft, drugs, or alcohol. Again, the application as completed by the lawyer answered "no." In fact, the client had advised the lawyer that he had been convicted in 1987 of operating a vehicle while intoxicated, and of other felonies as well. The lawyer, who had previously served as a public defender in Fountain County and who then practiced criminal defense law in private practice, knew or should have known of his client's felony record. The hearing officer found that the lawyer intended to change the answer to the question to reflect the 1987 conviction, but did not.[1] The client signed the prepared application, thereby declaring that all answers contained therein were true and correct, and acknowledging his understanding that it was a felony to falsify the answers. The lawyer signed the application, thereby representing that "Under the penalties of perjury I declare that I have examined this application including the accompanying forms, schedules, and statements and to the best of my knowledge and belief it is true, correct, and complete." The signatures indicated that they had been subscribed and sworn before a notary public. All the aforementioned executions of the form occurred on May 1, 1992.

On November 12, 1992, a state excise police officer and an Indiana State Police detective interviewed the client and learned that the lawyer had assisted him in preparing the falsified application. Two days before, the lawyer admitted to state police that he prepared the application, that he knew the client was a convicted felon, and that he was wrong in preparing the application as he did.

When chief deputy Christoff received the lawyer's interview report from the state police, he was anxious to file charges against the lawyer. Prosecutor Holmes told Christoff not to pursue perjury charges or an attorney disciplinary complaint against the lawyer based on his preparation of the client's ABC applications because the lawyer was a public figure and that it would therefore be unwise to pursue actions prematurely. Holmes also felt that the client's testimony would be key to any prosecution of the lawyer. At disciplinary hearing, it was stated that his strategy was to allow the case against the client to be resolved to reduce risk of inconsistent statements made by the client between his case and the lawyer's.

On November 12, 1992, the client was charged in Fountain Circuit Court with falsification of records, a class B felony; on February 15, 1993, he was charged with non support of dependent in the same court, a class D felony; and on March 2, 1993, he was

---

**1.** The lawyer testified in this disciplinary case that he had placed a note on the erroneously completed application to correct it but that the note must have fallen off so that his secretary did not know to make the change. Tr. pp. 80–81. Conversely, the police report produced after the police interviewed the lawyer indicated only that the lawyer, at the time he incorrectly completed the applications, knew that his client was a convicted felon and admitted that he was wrong in preparing the application as he did. Tr. pp. 11–12.

charged in the same court with falsification of records, a class D felony, in relation to an unrelated application he submitted to the ABC. On April 25, 1994, the client was convicted of non support of a dependent pursuant to a plea agreement which called for the dismissal of the two falsification charges. Neither the law enforcement agencies nor the Fountain County Prosecutor's office took any further action in the investigation of the lawyer between November 1992 and February 1994.

In late 1993, another Fountain County lawyer informally spoke with Christoff at the county courthouse about the falsification matter. Christoff replied that the lawyer's part in the preparation of the false application was a mistake that anyone could have made and that the prosecutor's office was not going to do anything criminally or by way of initiating disciplinary proceedings. The other lawyer advised Christoff that the lawyer had told him that the lawyer's involvement was a "mistake." Christoff agreed that the lawyer had made a mistake.[2] Similarly, Christoff had a conversation with another individual in mid–1992 about the lawyer's involvement in the falsification. Christoff informed the individual that he would not prosecute the lawyer because he did not think the local trial court judge would allow an attorney to be charged with a felony.

In late 1993, the lawyer developed an interest in running as his party's candidate for prosecutor of Fountain County. The lawyer received encouragement from party members in the county. In early 1994, he decided to file as a candidate to run in the 1994 primary, the filing deadline being February 18, 1994.

On February 15, 1994, on his way to Indianapolis to obtain the appropriate paperwork to formally file his candidacy, the lawyer stopped at the courthouse in Fountain County and informed several people of his intentions and his purpose for going to Indianapolis that day. As a matter of courtesy, he also stopped by to see Holmes, who was interested in pursuing a second term as prosecutor, to inform him of his intention to file for that office. After Holmes had spoken briefly with the lawyer, he returned to his office and spoke with Christoff. Christoff asked Holmes what he intended to do about the lawyer's involvement with the ABC falsification matter. Holmes sent Christoff to bring the lawyer to Holmes' office. Once there, Christoff advised the lawyer that the falsification investigation was still "open." Holmes advised the lawyer that if he ran for the office of prosecuting attorney in the upcoming election, he would no longer "accommodate" him and would seek appointment of a special prosecutor. Christoff advised the lawyer that the criminal defendant, during a deposition, stated that the lawyer told him not to report his convictions on the ABC application. The lawyer asked Christoff if he believed that statement, and Christoff responded that he did not. Holmes then stated: "But you know what the public perception would be." Holmes further reminded the lawyer of the "old thing," referring to the lawyer's 1986 30–day suspension from the practice of law for unrelated misconduct. Holmes stated that he would not disclose the discipline during a campaign, but that since the discipline was a matter of public record it would probably be made public. Finally, Holmes informed the lawyer that he wanted to retain the office and that he would campaign vigorously and do whatever he had to in order to be reelected.

The lawyer did not go to Indianapolis that day and did not file as a candidate for the 1994 primary election. Neither Holmes nor Christoff requested a special prosecutor at that time, nor did they contact the Disciplinary Commission regarding a possible disciplinary complaint based on the lawyer's

---

**2.** The relevant testimony given by the other lawyer at this disciplinary hearing was as follows:

Commission: And in this discussion in the outer hallway of the Fountain County courthouse with Mr. Christoff what was said regarding [the lawyer] and the [client's] ABC application?
Witness: It was a very brief conversation. I just uh recall asking Mr. Christoff you know what in the heck was going on with the [lawyer's investigation] and the [client's] thing on that

application and uh it was a casual conversation about you know it was a mistake and uh you know that that it was felt that it was a mistake and that uh they weren't going to do anything about it . . .
Mr. Christoff um responded that uh he thought it was a mistake, that anyone could have made, and that they weren't going to do anything about it as far as disciplinary actions or criminal actions.
Tr. pp. 32–33.

actions with regard to the client's ABC applications.

Members of the lawyer's political party in Fountain County continued to encourage the lawyer to run for the office of prosecuting attorney and eventually succeeded in persuading him to run. Since the lawyer had missed the deadline for filing for the primary election, in late April 1994, he agreed to be slated by the party as the prosecuting attorney candidate for the general election in the fall. He never told Christoff or Holmes directly. However, during an encounter with Christoff at the county courthouse, Christoff asked if the lawyer was going to run, even in light of the 1986 disciplinary action and the ABC falsification matter.

After the criminal case against the defendant concluded on April 25, 1994, Christoff asked Holmes for permission to proceed against the lawyer. Holmes requested that Christoff again talk to the client to verify that his present statements were consistent with earlier ones. Holmes gave Christoff permission to file disciplinary charges against the lawyer. He did not give Christoff permission to file criminal charges due to serious misgivings about the client's credibility and reliability.

Sometime around late April of 1994, Holmes, after learning that the lawyer had again expressed interest in running for the office of prosecuting attorney in Fountain County, contacted a representative of the Indiana Prosecuting Attorney's Council. He explained to the representative how the lawyer was intending to seek the office Holmes held and recounted the issues surrounding the pending investigation against the lawyer. He sought advice on the best course of action to take given the situation.

On May 2, 1994, Christoff filed a disciplinary grievance against the lawyer. On May 10, 1994, Holmes filed a motion for special prosecutor to investigate the lawyer in connection with the falsification matter. That motion was denied on June 8, 1994. At the lawyer's political party's caucus on June 2, 1994, the lawyer was slated as the party candidate for prosecuting attorney. He actively campaigned during the ensuing months; however, Holmes was reelected as prosecutor in the fall. On November 23, 1994, Holmes filed a second motion for special prosecutor, which was also denied.

The hearing officer concluded that both Holmes and Christoff violated Prof.Cond.R. 8.4(d) by engaging in conduct that was prejudicial to the administration of justice. Specifically, the hearing officer found that statements made by Holmes and Christoff to the lawyer on February 15, 1994, contained a "thinly veiled" threat that if the lawyer ran for Holmes' office, he could expect investigation by a special prosecutor and other detrimental legal action to ensue, despite the fact that the investigation had lain dormant for about 15 months prior to the lawyer's announcement that he would run for office.[3] That communication, the hearing officer found, discouraged the lawyer from running for office and was therefore an abuse of prosecutorial discretion and authority. The hearing officer found further that Holmes and Christoff took no action against the lawyer until his renewed interest in pursuing the office of prosecuting attorney became evident in late April 1994. At that time, Holmes allowed Christoff to file the grievance and himself filed a request for special prosecutor. Christoff, he found, "aided and abetted" Holmes in threatening, intimidating, or otherwise discouraging the lawyer from seeking the office of prosecuting attorney. Such actions, he found, similarly violated Prof. Cond.R. 8.4(d).

■ At the outset, we note that the Commission must prove attorney misconduct by "clear and convincing" evidence. *In re Oliver*, 493 N.E.2d 1237 (Ind.1986). In his petition for review, Holmes argues that his "neutral" act of requesting a special prosecutor to evaluate possible criminal charges against a political opponent cannot be misconduct, as it was an appropriate method of dealing with the conflict of interest the situation presented.[4] Holmes further argues that he took no

---

3. Additionally, the hearing officer also found that Holmes "seemingly had an ethical problem regarding the potential charges," apparently due to the conflict of interest presented by the pendency of a criminal investigation against the lawyer,

Holmes' political opponent. The hearing officer found further that Holmes felt the need to clear himself from any potential conflict of interest.

4. Holmes also requests oral argument on his petition for review. We deny his request.

formal action in the lawyer's investigation prior to April 1994 because he recognized the client as the crucial witness against the lawyer and thought it necessary to conclude the client's case before pursuing any formal action against the lawyer. The investigation against the lawyer, he states, was never closed, but merely held in abeyance pending resolution of the client's case.

In his petition for review, Christoff contends that he made no comment that could be construed as threatening or intimidating to the lawyer, that his signature does not appear on the motions for special prosecutor, and, in any event, that any action he took was done only pursuant to the instructions of Holmes, his supervising attorney. He also argues that the actions of the prosecutor's office were not inappropriate in that they only sought a neutral third party to review possible criminal actions by the lawyer. Both Holmes and Christoff contend that the findings of misconduct were not supported by clear and convincing evidence.

■ Clear and convincing evidence is an intermediate standard of proof greater than a preponderance of the evidence and less than proof beyond a reasonable doubt. It requires the existence of a fact to be highly probable. *Lazarus Department Store v. Sutherlin*, 544 N.E.2d 513 (Ind.Ct.App.1989). In light of that standard, we point out that we find no misconduct in the mere fact that the Holmes requested a special prosecutor to investigate the lawyer's actions. However, we do find by clear and convincing evidence that the timing of Holmes' request for a special prosecutor is indicative of its part in ongoing misuse of prosecutorial authority and discretion to discourage the lawyer from pursuing the office of Fountain County prosecutor.

Holmes and Christoff took no significant action in pursuit of a criminal case against the lawyer during the 15 months after they received the police report of interview with the lawyer and until their February 15, 1994, conversation with him. The testimony at hearing of this case revealed that, during that period, Christoff informed two individuals on two different occasions that the prosecutor's office would not take formal action against the lawyer because, variously, the lawyer's action was a "mistake" that anyone could have made and because they feared the trial court judge would not allow the criminal action to go forward. Later, when Holmes learned that the lawyer would run for the office he occupied, Holmes told the lawyer that *if he ran for the office* they could no longer accommodate him and would seek appointment of a special prosecutor. We find that the record in this case adequately supports that finding.[5] On February 15, 1994, Holmes manipulated the pendency of the long-dormant investigation, which his chief deputy prosecutor had twice indicated was not going to evolve into formal action, into a tool to aid him in his quest to retain his office by threatening imminent action against the lawyer if the lawyer ran for office against him. The statements which both Holmes and Christoff made to the lawyer on February 15, 1994, represented an effort to use their prosecutorial discretion to dissuade the lawyer from filing his candidacy. By later attempting to commence formal proceedings only after the lawyer's imminent candidacy became apparent, Holmes again improperly used his prosecutorial discretion to discourage the lawyer from seeking office. Further, Christoff's filing of the disciplinary grievance against the respondent neatly coincided with the time he and Holmes learned that the lawyer was going to be slated as the party nominee for the fall election. We do not dispute that the *Rules of Professional Conduct* require lawyers to report the misconduct of other members of the bar.[6] Again,

---

5. Relevant testimony at hearing of this matter was as follows:

Commission: All right. Well what happened [during the February 15, 1994 meeting between the lawyer, Holmes, and Christoff]?

Lawyer: Uh Dick started the conversation and uh said something about uh me running uh then I said yes that's true and then Dick said well if you run for prosecutor I'm no longer going to accommodate you and I'm going to seek the appointment of special prosecutor in regard to the [falsification] matter.

. . .

Uh Mark spoke next and said that there was a deposition given by the [defendant] uh where [defendant] had said that I told [him] not to report his felony convictions on the alcoholic beverage commission form.

Tr. pp. 92–93.

6. *See* Professional Conduct Rule 8.3(a).

however, the misconduct consisted of Christoff's filing of the grievance *in reaction to* the lawyer's bid to seek the public office occupied by Holmes. We therefore find that by their statements made to the lawyer on February 15, 1994, the respondents engaged in conduct that was prejudicial to the administration of justice in that they improperly used prosecutorial authority and discretion to dissuade the lawyer from seeking the office Holmes occupied. Further, by later filing the requests for a special prosecutor only after it became evident that the lawyer would be slated as a candidate and as a measure designed to hinder and thwart his pursuit of that office, Holmes violated Prof.Cond.R. 8.4(d). Similarly, by filing a grievance with the Disciplinary Commission at the same time and under the same circumstances, Christoff violated Prof.Cond.R. 8.4(d).

██ By our decision today, this Court does not seek to impair the exercise of prosecutorial authority or discretion. The key element of culpability in the respondents' actions was their use of the prosecutorial powers to further their self-interests. Holmes used his prosecutorial discretion and authority to further his interest in retaining his elected position. Christoff, who worked directly for Holmes, actively assisted him in doing so. Use of prosecutorial authority becomes improper when the sole or overriding motivation for exercising it is the prosecutor's personal benefit or gain, and not to further the public interest of effective law application and enforcement.

██ Having found misconduct, we now turn to the issue of proper sanction. In so doing, we examine the surrounding circumstances, the respondent's state of mind, the duty violated, actual or potential injury to the client, the duty of this Court to preserve the integrity of the profession, the risk to the public, and any mitigating or aggravating factors. *In re Conway,* 658 N.E.2d 592 (Ind. 1995); *In re Ragland,* 647 N.E.2d 319 (Ind. 1995). The respondents used their positions of authority for personal benefit. Holmes attempted to fend off what he saw as a challenge to his incumbency in office. Given that he wielded the ultimate prosecutorial authority in this case, we view his culpability as more severe than Christoff's, who was under his direct supervision. However, the action each took reflects abuse of their prosecutorial authority. Objective and appropriate use of prosecutorial authority must be preserved and respected, otherwise the public's confidence in those entrusted to enforce the state's laws erodes. Given these considerations, we are convinced that Holmes should be briefly suspended from the practice of law, and that Christoff should be publicly admonished.

It is, therefore, ordered that Richard M. Holmes be suspended from the practice of law for a period of thirty (30) days, beginning February 1, 1998, after which he shall be automatically reinstated to the practice of law.

Mark S. Christoff is hereby reprimanded and admonished for the misconduct set forth above.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the Federal District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondents.