**Michael E. BARTON, Appellant,
(Defendant below),**

v.

**STATE of Indiana, Appellee,
(Plaintiff below).**

No. 985S378.

Supreme Court of Indiana.

March 26, 1986.

Andrew P. Sheff, Patrick J. Bennett, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Michael E. Barton was convicted after trial by jury of arson, a class A felony, Ind.Code § 35–43–1–1 (Burns 1985 Repl.). He was sentenced to a term of imprisonment of thirty years. The sole issue raised in this direct appeal is whether the evidence is sufficient to sustain the conviction.

We affirm.

The evidence which tends to support the judgment of conviction is as follows. Barton lived with his father in one side of a duplex. On March 20, 1985, Barton and his father had an argument. Mr. Barton left, then came home drunk, and appellant helped him upstairs where the argument continued. A witness who lived in the other half of the duplex heard shouting and stomping until she fell asleep towards midnight. Other neighbors who were awake saw no evidence of fire just before 12:00, but by midnight rolling orange flames and black smoke were pouring from the Barton residence.

Appellant was standing outside yelling for his father, saying "My dad's in there." A neighbor went around to the back entrance with him. They could not get in, but the neighbor opined that Barton was not giving the effort his best. Firefighters managed to bring Mr. Barton out, but he died later of heat and smoke inhalation.

Barton's version of the events was that he had awakened to find his radio on fire. It in turn had set his mattress on fire. He tried to push his mattress out the window, but it would not fit, so he took it downstairs. In the living-room, he saw an "itty bitty" flame coming from an arm chair. He tried but failed to fit the mattress out the front door. By then, the room was completely on fire.

An arson expert testified that he ruled out lightning, furnace or electrical problems, cigarettes, and spontaneous combustion as causes of the fire. *Tests of Barton's radio showed that it had not been on fire.* The expert's opinion was that an accelerant, probably kerosene, had been used throughout the ground floor and the stairway to start the blaze.

Kerosene was detected through analysis of two samples from the living room. Oth-

er samples, including one from the stairway, contained no traces of kerosene, a fact which appellant contends requires reversal of his conviction. However, experts testified that water used to extinguish the fire could have washed away the traces, that they could have burned up entirely, or that the samples may simply have been taken from a spot where accelerant was not applied.

In any case, the arson investigator's opinion that an accelerant had been used to start the fire was not based solely on the tested samples. The intensity and speed of the blaze indicated an accelerant had been used, and observation of the burn patterns revealed that the fire's origin was a large area of the ground floor and the stairway. "Pour patterns", "char patterns", and the shiny quality of the burned wood floors on the first floor and the stairway also were characteristic of fires caused by accelerants. In the ruins, investigators found a mattress in the living room and a five-gallon metal can laying nearby.

In explanation of the evidence of kerosene on the floors, Barton claims that he and his father were in the habit of filling their kerosene space heaters in the living room and always managed to spill some kerosene on the floor. He said one time four to five gallons were spilled. He said he often spilled more kerosene as he carried the heater up the stairway.

Barton argues alternatively that the evidence was insufficient to prove the fire was set intentionally and that it was insufficient to prove he was the arsonist. We will neither reweigh the evidence or judge the credibility of the witnesses. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260. We will affirm the conviction where substantial evidence exists on each element of the crime. The jury was the trier of fact and was entitled to determine which version of the incident it would credit. *Robinson v. State* (1985), Ind., 486 N.E.2d 986.

As to whether or not the fire was intentionally set, the State's expert testimony that an accelerant was used and that the origin of the fire was throughout the lower floor was worthy of credit, and the jury was reasonable in accepting it. Conversely, it was well within the jury's province to *disbelieve* the story about the radio, the mattress, and the tiny fire downstairs as well as the proposed theory that previously spilled kerosene caused the fire.

Likewise, that *appellant* set the fire was proven beyond a reasonable doubt. Arson is almost always subject to proof only by circumstantial evidence, and, here again, we defer to the jury's determination that Barton set the fire.

We agree with him that presence alone is insufficient to prove guilt, as would be motive or opportunity alone. Here, however, the jury considered Barton's and the deceased's exclusive presence at the time of a fire deliberately set, his opportunity, his argument with his father, and his implausible explanation of the events. Just as one's flight may be circumstantial evidence of guilt, *Porter v. State* (1979), 271 Ind. 180, 391 N.E.2d 801, so too may a jury infer guilty knowledge from an accused's falsehoods. *Pettigrew v. State* (1975), 164 Ind.App. 297, 328 N.E.2d 236, concurring opinion.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.