**Ray McKINSTRY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff**

No. 71A03–9508–CR–273.

Court of Appeals of Indiana.

Jan. 26, 1996.

Transfer Denied April 3, 1996.

Deborah K. Hays, Granger, for Appellant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Office of Attorney General Indianapolis, for Appellee.

## OPINION

GARRARD, Judge.

This appeal presents the question of whether a criminal defendant's false alibi statements may be admitted as part of the state's case in chief since the adoption of the Indiana Rules of Evidence. We hold that, depending upon the circumstances of the defendant's utterance, such statements may be found relevant and are admissible within the trial court's discretion.

We begin by reviewing the facts. On January 12, 1995, Ray McKinstry went to a Subway sandwich shop in South Bend and filled out an employment application. The manager, Penny Collier, scheduled an interview with McKinstry for the following morning.

Later that evening Collier's husband, Rollie, was working alone in the shop. About 11:00 p.m. the shop was robbed by a man wearing a mask that covered his mouth and the end of his nose. Rollie reported the robbery to the police, who searched for the robber without success. When Rollie described the robber to Penny, she felt the description "kind of fit" McKinstry. Arrangements were then made for undercover officers to wait outside the Subway the following morning during McKinstry's employment interview.

The next morning McKinstry appeared for the interview. At first Rollie was unable to see the front of McKinstry's face or hear his voice and he signaled the police that he was unsure whether McKinstry was the robber. McKinstry turned around, looked at Rollie and said that he looked familiar. Rollie was then standing about five feet from McKinstry. When he saw McKinstry's entire face and heard his voice, he realized McKinstry was the robber.

The police entered and Officer Kuhny told McKinstry that he wanted to talk to him about the robbery the night before. McKinstry spontaneously stated that he had been with his mother at a nursing home the night before.

McKinstry was taken to the police station, was read *Miranda* warnings and agreed to speak with the police about the robbery. In response to questioning, McKinstry stated that on the night of the robbery he visited his mother at a nursing home (subsequently identified as the Transitional Health Care Center) from 6:00 p.m. to 8:00 p.m.; that he then went to his father's house and watched television; that he returned to the nursing home from 10:00 p.m. until 11:00 p.m.; that he then drove around until 5:00 a.m.; and that he "got hung up on a log" and damaged his vehicle. When asked what he had watched on television, McKinstry did not answer. Subsequent investigation revealed that McKinstry was not at the nursing home at the time of the robbery and that his vehicle was not damaged. Additionally, officers recovered a pair of gloves from McKinstry which Rollie identified as like those worn by the robber. During direct examination Rollie identified McKinstry as the robber.

As a part of the state's case-in-chief, and over defense objection, the state was permitted to introduce in evidence McKinstry's two statements to the police that he had been visiting his mother at the nursing home at the time of the robbery, together with the testimony of personnel from the nursing home that McKinstry had been there from about 7:30 p.m. until about 8:30 and had left by 9:00 p.m. McKinstry argues that this testimony was not relevant under the Indiana Rules of Evidence, or that if it was, any relevance was substantially outweighed by its potential to unduly prejudice the jury. *See* Ind.Evidence Rules 401, 402, 403.

McKinstry acknowledges that decisions prior to the adoption of the rules, notably *Barton v. State* (1986), Ind., 490 N.E.2d 317 and *Harris v. State* (1972), 258 Ind. 341, 281 N.E.2d 85 found such testimony admissible, but he contends that they have been superseded.

Evid.Rule 401 provides, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

We, of course, recognize that as a matter of formal logic, proof that a person stated that he was at place A at a stated time and that he was not in fact at that place at that time, does not tend to establish that he must therefore have been at place B.

On the other hand, the law is more than formal logic and common experience tells us that under some circumstances a person will attempt to fabricate an alibi in an effort to deflect prosecution for a crime in which the person has been involved. *Barton* and *Harris* recognized this and permitted evidence of the false alibi to be introduced at trial as it tended to establish consciousness of guilt on the part of the accused.

■ The circumstances under which the fabrication is attempted necessarily have a strong bearing upon the legitimacy of the proposed inference. Our decisions have committed to the sound discretion of the trial judge the determination of whether the circumstances are such that a consciousness of guilt might be reasonably inferred from such a false statement and whether the probative value of such evidence is outweighed by the danger of unfair prejudice. *See, e.g., Hunter v. State* (1991), Ind., 578 N.E.2d 353. We find no intention expressed in our Rules of Evidence to change the law in these regards.

Here the statements were made to police officers at a time when attention was focused upon McKinstry as a suspect in the commission of a robbery. It was well within the province of the trial judge to determine that McKinstry's statements created a reasonable inference of an attempted false alibi due to his consciousness of guilt. No abuse of discretion in admitting the evidence has been shown.

Affirmed.

HOFFMAN and DARDEN, JJ., concur.