**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 31 2014, 9:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KAREN M. HEARD**
Vanderburgh County Public Defender's Office
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSHUA W. SANFORD, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1312-CR-552 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Robert J. Pigman, Judge
Cause No. 82D02-1209-FC-1195

**July 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHARPNACK, Senior Judge**

## STATEMENT OF THE CASE

Joshua Sanford appeals his conviction of theft, as a Class D felony. Ind. Code § 35-43-4-2 (2009).

We affirm.

## ISSUE

Sanford presents one issue for our review, which we restate as: whether there was sufficient evidence to support his conviction of theft.

## FACTS AND PROCEDURAL HISTORY

In September 2012, Sanford, with the help of James Ling, broke into McCullough's Welding shop and stole a large iron working machine. Sanford painted the machine a different color, affixed a new serial number, and placed the machine in the metal working shop owned by his mother. At Sanford's direction, Ling prepared a phony bill of sale for the machine. During their investigation of the missing machine, the police located the machine at Sanford's mother's shop, and Tom McCullough identified it as the machine from his welding shop.

Based upon this incident, Sanford was charged with burglary, as a Class B felony, Indiana Code section 35-43-2-1 (1999); forgery, as a Class C felony, Indiana Code section 35-43-5-2 (2006); and theft, as a Class D felony, Indiana Code section 35-43-4-2. Following a trial, the jury found Sanford guilty of theft and not guilty of forgery. The burglary charge resulted in a hung jury. Sanford was sentenced to two years for his theft conviction, and this appeal ensued.

DISCUSSION AND DECISION

Sanford contends that the State failed to present evidence sufficient to support his conviction of theft. In order to obtain a conviction of theft in this case, the State must have proved beyond a reasonable doubt that (1) Sanford (2) knowingly or intentionally (3) exerted unauthorized control over (4) property (5) of McCullough Welding Shop (6) with the intent to deprive McCullough Welding Shop of any part of its value or use. *See* Ind. Code § 35-43-4-2(a).

When reviewing claims of insufficiency of the evidence, this Court neither reweighs the evidence nor assesses the credibility of the witnesses. *Brasher v. State*, 746 N.E.2d 71, 72 (Ind. 2001). Rather, we look to the evidence most favorable to the verdict and any reasonable inferences drawn therefrom. *Id.* We will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

The evidence at trial disclosed that Sanford worked at D & S Metal Supplies, which was owned by his mother. On the morning of Friday, September 21, 2012, Sanford went to McCullough's Welding shop and asked questions regarding the uses and capabilities of their 6,000 pound press called an Iron Worker. Later the same day, Sanford returned to McCullough's with James Ling and asked additional questions about the Iron Worker.

When employees of McCullough's Welding shop returned to work the following Monday, they found broken glass and holes in the rear wall, and the Iron Worker was missing. McCullough's employees informed the police that Sanford had visited the shop twice on the previous Friday and that both times he had asked questions about the Iron

3

Worker. When the police questioned Sanford, he produced the bill of sale prepared by Ling. The police eventually talked to Ling who told them he helped Sanford steal the Iron Worker from McCullough's Welding shop and that, at Sanford's request, he wrote a bill of sale for the Iron Worker using a fictitious seller's name. The police found the Iron Worker at D & S Metal Supplies, and they noticed that the paint on the machine as well as the glue on the back of the serial number plate was still a bit wet and "tacky." Tr. p. 188. Although it had been repainted and a new serial number had been affixed, McCullough was able to identify it as the machine taken from his shop based upon certain unique modifications that he and his employees had made over the years.

On behalf of the State, Ling testified that Sanford asked him if he wanted to "make some easy fast money." *Id.* at 37. On September 21, 2012, Sanford took him to McCullough's to show him a piece of equipment that Sanford wanted to steal. While Sanford talked to people in the shop, Ling looked around for cameras or alarm systems. He testified that they went back to McCullough's late that same night and broke into the back of the building. Once inside, he used a pipe to smash some lights, and then he and Sanford unhooked the Iron Worker, gathered up the attachments, and used a fork lift to lift the machine onto the back of Sanford's truck. Ling further testified that the men left the shop and went their separate ways but that within 10-15 minutes he received a phone call from Sanford saying that the machine had fallen off of his truck when he had turned a corner. Ling went to help Sanford, and while Sanford was away from the scene getting a fork lift to lift the machine off the ground, an elderly lady emerged from a nearby apartment

4

and talked to him. Once they had the machine in Sanford's garage, Sanford informed Ling that he planned to paint the machine a different color and change the serial number.

Terri Pagett also testified on behalf of the State. She stated that around 4 a.m. on September 22, 2012, she heard a loud noise that shook her apartment. She looked out of her apartment and saw a large piece of machinery in the middle of the road. As she continued to watch, she saw a man arrive and begin to pick up the pieces in the road. She asked him if everything was okay, and he responded in the affirmative. Pagett testified that a few minutes later she saw another man arrive driving a fork lift and that the two men loaded the machine onto the fork lift and left.

Ling further testified that the next day Sanford asked him to write a bill of sale for the Iron Worker. Sanford provided a fictitious seller's name and dictated the terms of the sale to Ling. Sanford then signed the document as the purchaser and paid Ling $1,500. When the police first interviewed Ling regarding the missing Iron Worker, he denied any involvement. Later he stated that his only involvement was writing the receipt, but eventually he admitted to his full involvement in the incident. Ling also testified that although he was hoping for leniency with regard to his charges stemming from this incident, he had been offered no leniency or immunity in exchange for his testimony at Sanford's trial.

Additionally, a handwriting expert testified that the bill of sale, with the exception of Sanford's signature and a number that was written in the body of the document, was written by Ling. The State also presented testimony that an investigation of the person listed as the seller on the bill of sale resulted in a conclusion that the person does not exist.

5

Sanford testified on his own behalf at trial. He indicated that Ling took advantage of him and sold him a stolen Iron Worker. Sanford explained that Ling told him he had an Iron Worker in a warehouse and that Ling borrowed his truck to get it. Sanford stated that Ling left at 7:00 p.m. on September 21, 2012 and told him he would return in two hours but that Ling did not return until 6:00 a.m. on September 22. He testified that he paid Ling $2,500 for the Iron Worker and that Ling issued him a receipt. Sanford also testified as to his inability to read and write due to his dyslexia; however, his testimony was contradicted by that of the handwriting expert who testified that Sanford read and completed forms by himself.

Sanford's wife testified as an alibi witness. She stated that Sanford was home all night pacing because he was upset about loaning his truck to Ling when Ling did not return in two hours as he had promised.

The evidence presented at trial is sufficient to sustain Sanford's conviction. Although Sanford claims that his conviction cannot stand because no evidence other than Ling's testimony links him to the theft, we know that the uncorroborated testimony of one witness, including an accomplice, may be sufficient by itself to sustain a conviction on appeal. *Smith v. State*, 809 N.E.2d 938, 941 (Ind. Ct. App. 2004), *trans. denied*. Moreover, it is within the jury's province to judge the credibility of the witnesses, *Brasher*, 746 N.E.2d at 73, and therefore to determine which version of the incident to credit. *Barton v. State*, 490 N.E.2d 317, 318 (Ind. 1986). Sanford's appeal is merely an invitation for us to reweigh the evidence and assess the credibility of the witnesses, which we cannot do. *See Brasher*, 746 N.E.2d at 72.

## CONCLUSION

For the reasons stated, we conclude that there was sufficient evidence to sustain Sanford's conviction of theft.

Affirmed.

NAJAM, J., and BROWN, J., concur.