## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 27 2017, 10:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer D. Wilson Reagan
Wilson & Wilson
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Andre Q. Bacon,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 27, 2017

Court of Appeals Case No.
41A04-1702-CR-292

Appeal from the Johnson Superior Court

The Honorable Lance D. Hamner, Judge

Trial Court Cause No.
41D03-1509-CM-1351

**Brown, Judge.**

[1] Andre Q. Bacon appeals his convictions for two counts of battery as class A misdemeanors, trespass as a class A misdemeanor, and criminal mischief as a class B misdemeanor. Bacon raises three issues which we revise and restate as whether the evidence is sufficient to sustain his convictions. We affirm.

## Facts and Procedural History

[2] Bacon did construction work with Joel Bragg and sometimes went to bars with him together with other coworkers. On one occasion at work, Joel told Bacon about an incident involving his father Michael Bragg. Bacon asked about the race of the other individual involved in the incident, and Joel told him that the other individual was a black male. The previous incident occurred in April and involved Michael suffering "a stabbing in his chest," his ear being "bitten off," and "quite a few scars on his head from being hit with bricks." Transcript at 11.

[3] On the evening of September 18, 2015, Joel, Bacon, and their coworkers had drinks in the parking garage at their worksite, and later Joel went home and to bed. His stepmother was on the front patio, which "sits up high off the garage," when Bacon and Brad Gallagher arrived in a truck, walked up to the house while carrying beer, and asked if Joel was home. *Id.* at 18. Joel and Michael came out, Michael introduced himself and went back inside for a drink, and Bacon looked at Gallagher while laughing and said "I'm going to ask the man, that's why I came here." *Id.* at 10.

[4] When Michael returned to the patio, Bacon asked him what had happened to his ear, and Michael began to tell Bacon about the prior incident. As Michael

was telling the story, Bacon said "oh, you didn't like these people because they played their music too loud," Joel's stepmother stated "no . . . that's not the case, there's so much more," and then Bacon placed his hand up approximately twelve to fourteen inches from her face "while he was staring at Michael [and] said I'm not talking to you, I'm talking to him." *Id.* at 12. Michael believed that Bacon was trying to provoke him to become angry. Bacon asked Michael "oh so you're Joel's daddy, huh" and "he kept saying it. You're Joel's daddy. Oh, you're Joel's daddy." *Id.* at 13. Michael said "I think it's time you leave, you're being disrespectful to my wife, and it's time for you guys to go." *Id.* Bacon then said "you're fraudulent, man, you're fraudulent," and Michael replied "I don't know what you mean by fraudulent, but it's time for you guys to go." *Id.*

[5] At that point, Bacon stood up, ran over to Michael and jumped on or tackled him, had him on the ground or stairs, and placed his hand around Michael's throat. Michael had two teeth pulled earlier that day, did not wish to be in an altercation, and "just kind of folded up and let [Bacon] take control of [him]." *Id.* at 68. Joel called the police at some point, Joel's stepmother told Bacon to let Michael up and that the police were on their way, and Bacon said "I still have a few minutes." *Id.* at 16. Gallagher told Bacon to stop, and Joel and Gallagher tried to pull Bacon away from Michael but Bacon was "a big guy" and would not let go. *Id.* at 40. Bacon rolled onto Joel, took Joel's head, and started slamming it onto the concrete patio floor. Michael attempted to pull Bacon from Joel, and Bacon turned to Michael and pushed or threw him over

or through the patio railing, causing the railing to break and Michael and the railing to fall off the patio four or five feet to the ground. Michael was "bleeding all over the place." *Id.* at 73. Bacon pinned Joel against the brick wall of the house and beat his head against the wall, and Michael went up the stairs, retrieved a fireplace shovel or poker, and struck Bacon. Gallagher told Bacon they needed to leave, they "kind of hurried out to the exit way," and as Gallagher and Bacon moved to exit the patio, Bacon pushed Joel's head against the brick wall, causing Joel to fall to the ground, and then struck Joel's head with his foot. *Id.* at 45. Bacon and Gallagher walked down to and entered their truck and drove away, almost striking another car as they pulled out of the driveway. As Bacon and Gallagher were driving away, Michael said "[y]ou're a fu----- ni----." *Id.* at 30.

[6] Lieutenant Andrew Barnhart with the Johnson County Sheriff arrived at the scene and observed that several things were in disarray, the patio railing was broken off and on the ground, and there was broken glass and fluid on the patio. Lieutenant Barnhart also observed that Joel had a large lump on his head and a cut on one of his arms and that Michael had significant lacerations on the top of his head and on his leg, some additional abrasions, and a permanent scar on his shin which occurred as a result of being thrown off the porch.

[7] The State charged Bacon with: Count I, battery of Michael resulting in bodily injury as a class A misdemeanor; Count II, battery of Joel resulting in bodily injury as a class A misdemeanor; Count III criminal trespass as a class A

misdemeanor; and Count IV, criminal mischief as a class B misdemeanor. At Bacon's bench trial, the trial court admitted photographs into evidence and heard testimony from Joel, Michael, Joel's stepmother, Lieutenant Barnhart, and Bacon. Both Joel's and his stepmother's testimony included that when Bacon stood up, he flipped a glass table before attacking Michael.

[8] Bacon testified that he was with Gallagher and believed they were going to meet Joel at a bar, that he did not have plans to visit Joel's house and did not know where Joel lived, and that Gallagher pulled into the driveway at Joel's house, walked up to the patio, and then came back and waved for him to come up to the patio. He stated he learned he was at Joel's house when he was in the driveway. Bacon testified that, when he noticed Michael's ear, he "remembered the story" and asked Michael "was it okay for me to be here." *Id.* at 113. When asked "[w]hat story are you referring to," Bacon testified: "At work it was going around that it was a racial incident or whatever, and . . . I'm black, and I'm at his house, so I want to know, is it all right for me to be sitting here." *Id.*

[9] Bacon indicated that he had previously talked to Joel about the incident involving Michael earlier in the year and that Joel had told him the incident involved race. Bacon testified "I just asked him, you know. I asked him about the incident. And I asked him was it a racial issue. Do you have a problem with black people, or whatever." *Id.* at 114. Bacon stated that Michael "got a little flustered there," that Joel's stepmother spoke up, and that he said "no sweetheart, I'm not talking to you, I'm talking to him. You know, he's a grown

man, he can answer for himself." *Id.* Bacon indicated they "continue[d] to talk about the situation," that he again called Joel's stepmother "sweetheart" but meant no disrespect, and Michael became upset and called him "a stupid ni---- like three, four five times, ranting, yelling it, and grabbed that fire poker." *Id.* at 115. Bacon indicated that he stood up, Joel jumped on his back, Michael started to come toward him with the poker, and "I just slammed myself to the ground, grabbed him, got him off, and stood up and there was Michael with the fire poker, and I grabbed him." *Id.* at 117. He stated he grabbed Michael "by the throat" and "slammed him to the ground and choked him a bit, and told him you don't talk to people like that." *Id.* Bacon stated his belief that if he had not grabbed Michael at that point, Michael was going to strike him with the fireplace poker. He denied smashing Joel's head against the wall or stomping on him with his foot as he was leaving. Bacon testified that he became aware that Joel had called his boss, that when he walked past Joel to leave Joel was on the phone, and that three or four minutes later Gallagher received a phone call from Bacon's boss. In closing, Bacon's defense counsel argued that Bacon acted in self-defense, challenged the credibility of the State's witnesses, and argued that the witnesses told three different stories as to what happened during the incident.

[10] The court found Bacon guilty as charged and sentenced him to 365 days with 120 days executed and 245 days suspended to probation for each of his convictions under Counts I through III, sentenced him to 180 days with 120 days executed and 60 days suspended to probation for his conviction under

Count IV, and ordered the sentences to be served concurrently. It ordered that thirty days of the executed sentence be served as a direct commitment to work release followed by ninety days on home detention and that Bacon complete forty hours of community service.

## Discussion

[11] The issue is whether the evidence is sufficient to support Bacon's convictions and negate his claim of self-defense. At the time of the offense, Ind. Code § 35-42-2-1 provided "a person who knowingly or intentionally . . . touches another person in a rude, insolent, or angry manner . . . commits battery, a Class B misdemeanor." (Subsequently amended by Pub. L. No. 65-2016, § 33 (eff. Jul. 1, 2016)). The offense is a class A misdemeanor if it results in bodily injury to any other person. Ind. Code § 35-42-2-1. Ind. Code § 35-43-2-2 provided that a person who, not having a contractual interest in the property, knowingly or intentionally refuses to leave the real property of another person after having been asked to leave by the other person or that person's agent commits criminal trespass as a class A misdemeanor. (Subsequently amended by Pub. L. No. 32-2016, § 1 (eff. Jul. 1, 2016)). Ind. Code § 35-43-1-2(a) provided that a person who recklessly, knowingly, or intentionally damages or defaces property of another person without the other person's consent commits criminal mischief as a class B misdemeanor. (Subsequently amended by Pub. L. No. 76-2016, § 4 (eff. Jul. 1, 2016); Pub. L. No. 252-2017, § 12 (eff. Jul. 1, 2017)).

[12] Bacon asserts that the State failed to negate every element of his self-defense claim and thus all four of his convictions should be overturned. He argues that he was not told to leave until the confrontation began at which point he defended himself and then left the residence, he did not provoke Michael who was unreasonably aggravated by Bacon's unwise comments and overreacted by attacking him with a fireplace tool, and that, based on Michael's involvement in the April 2015 incident and Michael's actions, he had a reasonable fear of death or great bodily harm from Michael. He also argues that several evidentiary inconsistencies weaken the State's case to the point the evidence is insufficient to prove the elements beyond a reasonable doubt, including that the State's witnesses were close family members who lived together, Gallagher was not called by the State, there is a serious question of whether or not the table was flipped as the table is upright in one of the photographs admitted into evidence, Joel's testimony differs from that of the other witnesses and from his own deposition testimony in which he at first stated Michael attacked Bacon first, and that there was no photographic evidence of Joel's injuries.

[13] The State maintains that the evidence is sufficient to sustain Bacon's convictions and he has not met any of the elements of self-defense. It argues that Bacon was expressly asked to leave the residence before the altercation began, he started the physical altercation by tackling Michael and placing his hands around his throat, Bacon was the initial aggressor and had no reason to fear death or great bodily harm, and nothing in the record besides Bacon's self-serving testimony shows he acted in self-defense. The State also argues that

each of the State's witnesses were rigorously cross-examined, the trial court was aware of any potential problems with the witnesses' testimony and was able to make a credibility determination, it is not relevant whether the table was upright in a photograph, at trial Joel clarified his deposition testimony,[1] and that Deputy Barnhart observed the lump on Joel's head and the lacerations on Michael's head and leg.

[14] "A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2(c). A valid claim of self-defense is legal justification for an otherwise criminal act. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). In order to prevail on a self-defense claim, a defendant must demonstrate he was in a place he had a right to be; did not provoke, instigate, or participate willingly in the violence; and had a reasonable fear of death or great bodily harm. *Id.* The amount of force a person may use to protect himself or herself must be proportionate to the urgency of the situation. *Harmon v. State*, 849 N.E.2d 726, 730-731 (Ind. Ct.

---

[1] During the cross-examination of Joel, defense counsel stated "in your deposition, when I asked you what was happening before the table was thrown, you said that your dad was shoving [Bacon], is that correct," Joel responded affirmatively. Transcript at 54-55. Defense counsel then asked "[a]nd then when I came back and asked you again, later, you said you didn't see what happened right before the table got flipped, correct," Joel replied "No. Because there wasn't nothing to happen. [Bacon] was provoking my father, calling him fraudulent, my dad's over by the rails, [Bacon's] behind me. The next thing I know, the table . . . [Bacon's] going towards the table, throwing the table out of the way to get to my dad." *Id.* at 55.

App. 2006). When a person uses more force than is reasonably necessary under the circumstances, the right of self-defense is extinguished. *Id.* at 731.

[15] When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Wilson*, 770 N.E.2d at 800. If a defendant is convicted despite his claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. *Id*. at 800-801. A mutual combatant, whether or not the initial aggressor, must declare an armistice before he or she may claim self-defense. *Id*. at 801; *see* Ind. Code § 35-41-3-2(g) (providing "a person is not justified in using force if . . . the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action"). The standard of review for a challenge to the sufficiency of the evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Wilson*, 770 N.E.2d at 801. We neither reweigh the evidence nor judge the credibility of witnesses. *Id*. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Id*.

[16] The trial court heard testimony from Joel, Michael, Joel's stepmother, Officer Barnhart, and Bacon. We are mindful that the trier of fact is entitled to determine which version of the incident to credit. *Barton v. State*, 490 N.E.2d 317, 318 (Ind. 1986), *reh'g denied*; *Scott v. State*, 867 N.E.2d 690, 695 (Ind. Ct.

App. 2007), *trans. denied*. The court as the trier of fact was able to consider the extent to which the testimony of each witness was consistent or inconsistent with the testimony of the other witnesses and was able to assess the demeanor and credibility of the witnesses and weigh their testimony. We will not reweigh the evidence or judge the credibility of witnesses. *See Wilson*, 770 N.E.2d at 801. The trial court as the trier of fact could infer that Bacon participated willingly in the violence, that he did not have a reasonable fear of great bodily harm, or that the amount of force he used was unreasonable under the circumstances.

[17] We conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could have determined beyond a reasonable doubt that Bacon did not validly act in self-defense and that he was guilty of the charged offenses. *See Rodriguez v. State*, 714 N.E.2d 667, 670-671 (Ind. Ct. App. 1999) (noting that the defendant's version of events differed from other testimony, declining to reweigh the evidence, and holding that sufficient evidence existed to rebut the defendant's claim of self-defense), *trans. denied*.

## *Conclusion*

[18] For the foregoing reasons, we affirm Bacon's convictions.

[19] Affirmed.

May, J., concur in result without opinion.

Pyle, J., concur.